**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRYCE A. NICKELSON,
Petitioner,

v. Case No. 8:23-cv-1081-KKM-SPF

SECRETARY, DEPARTMENT OF CORRECTIONS,
Respondent.

---

**ORDER**

Nickelson, a Florida prisoner, timely[1] filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, (*id.*), the supporting memorandum, (Doc. 2), and the response in opposition, (Doc.

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Nickelson's conviction and sentence were affirmed on November 13, 2020. (Doc. 18-1, Ex. 23.) At that time, the Supreme Court of the United States had extended the period to seek a writ of certiorari from 90 days to 150 days due to the COVID-19 pandemic. Miscellaneous Order, 334 F.R.D. 801 (U.S. Mar. 19, 2020). Nickelson thus had until April 29, 2021, to seek a writ of certiorari. By that date, he had already filed a petition alleging ineffective assistance of appellate counsel. (Doc. 18-1, Ex. 27.) The petition was pending until June 10, 2021, the end of the 14-day period to seek rehearing of the state appellate court's May 27, 2021 denial. (Doc. 18-1, Ex. 26.) On November 9, 2021, after 151 days of untolled time, Nickelson moved for postconviction relief. (Doc. 18-1, Ex. 29.) His postconviction proceedings remained pending until the state appellate court's mandate issued on December 30, 2022. (Doc. 18-1, Ex. 38.) On May 11, 2023, after another 131 days of untolled time, Nickelson filed his § 2254 petition. Because fewer than 365 days of untolled time elapsed, Nickelson's § 2254 petition is timely.

17), the petition is denied.[2] Because reasonable jurists would not disagree, Nickelson is not entitled to a certificate of appealability.

# I. BACKGROUND

## A. Procedural Background

A state court jury convicted Nickelson of making a false and fraudulent insurance claim. (Doc. 18-1, Ex. 8.) The state court sentenced him to 92.55 months in prison, the lowest permissible term under the sentencing guidelines. (Doc. 18-1, Ex. 11; Ex. 7, pp. 462-63.) The state appellate court per curiam affirmed the conviction and sentence. (Doc. 18-1, Ex. 23.) The state appellate court also denied Nickelson's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141(d). (Doc. 18-1, Exs. 26 & 27.) Nickelson sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 18-1, Ex. 29.) The state court denied Nickelson's postconviction motion, and the state appellate court per curiam affirmed. (Doc. 18-1, Exs. 30 & 37.)

## B. Factual Background[3]

Nickelson brought his Dodge Durango to Pinellas Auto Body Shop in Clearwater, Florida, for repairs on May 11, 2017. (Doc. 18-1, Ex. 7, pp. 326-29.)

[2] Nickelson did not file a reply.

[3] This factual summary is based on the trial transcript and appellate briefs.

A technician found that a mixture including liquid sugar and acorn shells had been placed in the gas tank. (*Id.*, p. 327.) Nickelson paid $800 out-of-pocket to replace the fuel pump. (*Id.*, pp. 211, 327.) He did not make a claim through his insurer, Ocean Harbor, because he only had collision coverage. (*Id.*, p. 212.) The new fuel pump came with a warranty. (*Id.*, p. 335.)

Nickelson continued to have problems with the Durango and brought it back to Pinellas Auto Body Shop on June 14, 2017. (*Id.*, pp. 189-90, 328.) A technician found the fuel tank filled with sand, shells, acorns, and a sugary substance. (*Id*, pp. 336-37.) Because the damage was caused by an external source, it was not covered by the fuel pump warranty. (*Id*, pp. 336-37.)

Shauna Brennom, a service advisor at Pinellas Auto Body Shop, talked to Nickelson when he brought Durango in on June 14, 2017. (*Id.*, pp. 326-28.) She said to Nickelson "that maybe it would be best to consider" comprehensive insurance because "that sort of thing can assist." (*Id.*, p. 335.) Brennom told him that if his "current insurance policy has comprehensive or collision—which is the way I always word myself—because both of them together will combine into coverage" for vandalism. (*Id.*, pp 349-50.) But Brennom denied that she implied to Nickelson "that he could apply for insurance and that the insurance would just deny or approve the claim." (*Id.*, p. 350.) Brennom had difficulty reaching Nickelson by phone, so she primarily talked to Nickelson's girlfriend, Karen. (*Id.*, pp. 337, 348-49.)

On Thursday, June 22, 2017, Nickelson obtained a full-coverage insurance policy on the Durango through Progressive. (*Id.*, pp. 200, 294.) On Monday, June 26, 2017, Nickelson called Progressive to file a claim for vandalism-related damage. (*Id.*, pp. 200-01, 295-96.) When asked when the vehicle was damaged, Nickelson responded that it had occurred sometime over the past weekend, on either Saturday, June 24, or Sunday, June 25, 2017. (*Id.*, pp. 201-02, 305-06.) After a few days, Nickelson called Progressive to cancel the claim because he felt uneasy. (*Id.*, p. 217.) But the claim was already being processed. (*Id.*, p. 217.)

When Guy Jackson, a Progressive claims adjuster, inspected the Durango on June 27, 2017, he recognized it. (*Id.*, p. 363.) Jackson had been at Pinellas Auto Body Shop on June 19, 2017, to examine another vehicle with a similar vandalism claim. (*Id.*, pp. 363-64.) Because it was unusual for more than one vehicle to be at the shop for vandalism, Brennom had asked Jackson to look at the gas tank on Nickelson's Durango, even though it was not the vehicle Jackson was there to inspect. (*Id.*, p. 349.) Thus, Jackson knew that the Durango was already at Pinellas Auto Body Shop because of vandalism damage to the gas tank by June 19, 2017, when he first saw it there. Nickelson's insurance claim was denied for misrepresentation. (*Id.*, p. 376.)

During the subsequent police investigation, Detective Kevin Morris spoke with Brennom. (*Id.*, p. 346.) According to Detective Morris, Brennom

said that Nickelson's girlfriend, Karen, had told her that Nickelson planned to take out an insurance policy before filing a claim. (*Id.*, pp. 218-19.) But Brennom testified at trial that she did not recall telling Detective Morris that Karen or Nickelson planned to commit fraud. (*Id.*, p. 348.)

When Detective Morris interviewed Nickelson, Nickelson admitted that he had not been truthful when he initiated the claim, and that, at the time of the interview, he understood that what he did was wrong. (*Id.*, pp. 216-17.) Nickelson's defense was that the State failed to meet its burden of proof because the evidence did not show that he intended to commit fraud at the time he initiated the claim. (*Id.*, pp. 413-18.)

## II. STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to

prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the

decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.* at 125-26.

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.' " *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner's factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable

"even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim

properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Nickelson brings claims for ineffective assistance of trial counsel and appellate counsel. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When a petitioner argues that appellate counsel was ineffective, to demonstrate prejudice, he must show "a reasonable probability" that, but for counsel's performance, "he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and

§ 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Grounds One and Three: Ineffective Assistance of Appellate Counsel

#### 1. Ground One

Nickelson contends that appellate counsel was ineffective for failing to argue that the state trial court erred by denying his request for a continuance. Nickelson alleges that the denial led his private attorney to withdraw and violated his constitutional rights to a fair trial, to the attorney of his choice, and to due process. He asserts that the preparation for and outcome of his trial would have been different had a continuance been granted and his attorney remained on his case.

The Office of the Public Defender represented Nickelson during pretrial proceedings. But on August 28, 2018, the day before the trial was scheduled to begin, private counsel filed a notice of appearance and a motion to continue the trial. (Doc. 18-1, Ex. 4.) On August 29, 2018, the scheduled trial date, private counsel appeared in court. He stated that, two days earlier, Nickelson's boss had asked him to help Nickelson. (Doc. 18-1, Ex. 5, p. 4.) Private counsel explained that he was "not really prepared to do the trial" but that he "offered

to help [Nickelson] see if he could resolve it." (*Id.*) The State did not agree to a continuance. (*Id.*)

The state court judge explained that he had held "at least 10 prior pretrials, which is many, many, many more" than usual "in an effort to assist Mr. Nickelson in resolving this case with the State." (*Id.*) The state court judge said that he had set the matter for trial when the State and Nickelson could not reach an agreement and that, in the light of this history, he did not intend to continue the trial that day. (*Id.*) Private counsel indicated that if there was no continuance, "the public defender would have to remain on" because he was not prepared to go forward. (*Id.*, pp. 4-5.)

By happenstance, another trial over which the state court judge was presiding had not yet concluded. (*Id.*, p. 5.) No other judge was available to fill in and preside over Nickelson's trial that day, August 29, 2018. (*Id.*, pp. 5, 9.) Therefore, despite the assigned state court judge's reluctance to grant a continuance, Nickelson's trial was reset and began on September 5, 2018. (*Id.*, pp. 5, 9.)

Meanwhile, counsel moved to withdraw on August 31, 2018, two days after he appeared in court representing Nickelson. (Doc. 18-1, Ex. 6.) As grounds for withdrawal, private counsel stated that "[a] conflict has arisen that does not allow [him] to ethically represent the Defendant in this matter." (*Id.*) The Office of the Public Defender represented Nickelson at trial.

The state appellate court denied without discussion Nickelson's claim that appellate counsel was ineffective for failing to argue that the trial court's denial of a continuance violated his constitutional rights. (Doc. 18-1, Ex. 27, pp. 7-11; Ex. 28.)

The Sixth Amendment right to counsel encompasses "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But because the Sixth Amendment's goal is to "guarantee an effective advocate for each criminal defendant rather to ensure that a defendant will inexorably be represented by the lawyer whom he prefers," a defendant's right to choose his counsel is not absolute. *Wheat v. United States*, 486 U.S. 153, 159 (1988).

"A defendant cannot use the right to counsel as a means to manipulate the court and cause delay." *United States v. Graham*, 643 F.3d 885, 894 (11th Cir. 2011). "Whether the denial of a request for continuance to obtain counsel is violative of the Sixth Amendment guarantee of the right to counsel must be resolved on a case by case basis, depending upon the particular circumstances, including the reasons for the request presented to the trial judge." *Id.* at 893 (quoting *United States v. Terry*, 449 F.2d 727, 728 (5th Cir. 1971)). "[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel." *Morris*

*v. Slappy*, 461 U.S. 1, 11-12 (1983) (internal quotation marks and citation omitted).

The state appellate court reasonably denied Nickelson's claim of ineffective assistance of appellate counsel. First, the record is unclear whether there was an adverse ruling from which to appeal. The state trial court did not expressly deny the motion for a continuance in the courtroom, and the state court docket does not list an order ruling on private counsel's August 28, 2018 written motion to continue the trial. (Doc. 18-1, Exs. 1 & 5.)

The lack of an adverse ruling at the trial court level meant that appellate counsel could not raise a claim about Nickelson's motion for a continuance. *See State v. Barber*, 301 So. 2d 7, 9 (Fla. 1974) ("An appellate court must confine itself to a review of only those questions which were before the trial court and upon which a ruling adverse to the appealing party was made.").

Furthermore, even if an adverse ruling could be gleaned from the record, it is not apparent that such a ruling caused counsel's withdrawal. Counsel did not specify the length of the requested continuance; he merely stated that he "need[ed] time" to go over the case. (Doc. 18-1, Ex. 4.) And when counsel moved to withdraw on August 31, 2018, he only cited a conflict that left him unable to "ethically represent" Nickelson. (Doc. 18-1, Ex. 6.)

Additionally, in court on August 29, 2018, the scheduled trial date, counsel stated that he had agreed to appear to attempt "help [Nickelson] see if

he could resolve it." (Doc. 18-1, Ex. 5, p. 4.) Thus, it appears that counsel did not anticipate representing Nickelson beyond any plea negotiations. But the state court judge explained that despite the parties' many opportunities to reach a resolution, they had not been able to do so. (*Id.*, pp. 4, 6-9.) Under these circumstances, Nickelson has not shown that any adverse ruling was "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Slappy*, 461 U.S. at 11-12.

Furthermore, because an adverse ruling was not preserved for appeal by an objection, appellate counsel could only challenge the denial of a continuance as a fundamental error. *See Jackson v. State*, 983 So.2d 562, 574 (Fla. 2008) (stating the "general rule [is] that an unpreserved error may be considered on appeal only if the error is fundamental"). "For an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process." *Id.* at 575 (citations omitted). Nickelson has not shown any fundamental error that appellate counsel failed to challenge. Thus, he has not shown that appellate counsel performed deficiently.

Nor has Nickelson demonstrated prejudice. Nickelson contends that he was prejudiced because a continuance would have allowed him to investigate a witness and would have substantially changed his defense at trial. But when assessing the performance of appellate counsel, the prejudice inquiry is

concerned with a reasonable probability that the outcome of the appeal would have been different. This is because the "ultimate focus of inquiry" in an ineffective assistance of counsel claim is "the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696; *see also Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (stating that, to show ineffective assistance of appellate counsel, a petitioner must show that appellate counsel performed deficiently and that "but for counsel's deficient performance he would have prevailed on appeal").

Nickelson's allegation that his defense would have been different had the continuance been granted involves the outcome of the trial and thus is insufficient to show prejudice from appellate counsel's performance. Moreover, as stated above, Nickelson has not shown a reasonable probability that the state appellate court would have reversed his convictions on the basis that the state trial court's decision was a fundamental error. Therefore, he has not shown that appellate counsel's performance prejudiced him.

Because Nickelson has not shown that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, he is not entitled to federal habeas relief on Ground One.

**2. Ground Three**

Nickelson contends that appellate counsel was ineffective for failing to argue that the trial court erred by limiting the testimony of "an exculpatory new witness," Tiffany Cartwright, without a *Richardson*[4] hearing. (Doc. 1, p. 22.) The defense did not disclose its intention to call Cartwright until the day of trial, when counsel told the state trial court that the defense planned to call Cartwright to testify for impeachment purposes. (Doc. 18-1, Ex. 7, pp. 150-54.) The state trial court agreed that her testimony would be permissible for impeachment. After the prosecutor had an opportunity to talk to Cartwright, the court and parties addressed her potential testimony:

> THE COURT: [ ] [W]hat's she going to say?
>
> [PROSECUTOR]: She's his employer and she – her testimony to me was that she - - he, the Defendant told her while this was ongoing stuff that the auto shop, particularly the witness I have from the auto body shop told them.
>
> THE COURT: What I think I hear you saying is she'll offer hearsay testimony that the Defendant offered to her?
>
> [PROSECUTOR]: Correct.
>
> THE COURT: Well, that's not going to be admissible unless there's some exception to the rule.

[4] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), requires a trial court to conduct a hearing "upon being advised of a possible discovery violation." *State v. Evans*, 770 So.2d 1174, 1182-83 (Fla. 2000).

> [DEFENSE COUNSEL]: (Unintelligible), but I think we'll be calling her. Her name is Tiffany Cartwright and it's for impeachment purposes, and there is something - -
>
> THE COURT: You can offer her for impeachment.
>
> [DEFENSE COUNSEL]: Right. And so that is what we would proffer.
>
> THE COURT: You haven't had the right to depose her, although you've spoken to her. Otherwise she's not a witness at this point in time on this case. So I don't think we have an issue. Was there something else?
>
> [PROSECUTOR]: Not in relation to that, Your Honor.

(*Id.*, p. 159.)

Nickelson contends that the prosecutor incorrectly characterized Cartwright's potential testimony. He alleges that Cartwright previously worked under Brennom's supervision at Pinellas Auto Body Shop. Nickelson alleges that Cartwright would have testified that it was "the business practice of the auto service shop and Ms. Brennom to advise customers to change their car insurance liability to full coverage, then direct Cartwright to change the dates of the customers' service work to a date after the full coverage went into effect to procure payment from the insurance companies." (Doc. 1, p. 23.) Nickelson asserts that Cartwright's testimony would have supported his defense that he only obtained the Progressive insurance policy based on Brennom's representation that this practice was permissible. Counsel did not call Cartwright.

Nickelson contends that his counsel may have violated discovery rules by omitting Cartwright from the witness list, and that the state trial court erred in failing to hold a *Richardson* hearing regarding this potential discovery violation. He appears to argue that if such a violation were deemed inadvertent or trivial, he could have called Cartwright without any limitation on her testimony.

The state appellate court did not unreasonably deny Nickelson's claim of ineffective assistance of appellate counsel. First, as in Ground One, the record contains no clear adverse ruling from which to appeal. The state trial court did not limit counsel's ability to call Cartwright for impeachment, which counsel plainly stated was the only purpose for which she considered calling Cartwright. *See Barber*, 301 So. 2d at 9.

Moreover, even if there were an adverse ruling, Nickelson has not shown that appellate counsel was ineffective for failing to challenge it. First, because a challenge to the state court's decision was not preserved by an objection, it could have been raised on appeal only on the ground of fundamental error. *See Jackson*, 983 So.2d 562.

Nickelson has not shown a fundamental error. He contends that Cartwright would have testified that Brennom advised customers to get full insurance coverage when they brought vehicles in for service and then had service records doctored based on the relevant insurance policy's effective date.

The exclusion of this testimony, even if erroneous under state evidentiary law, was not "basic to the judicial decision under review and equivalent to a denial of due process." *Jackson*, 983 So.2d at 575. Nickelson has not shown that evidence of Brennom's involvement in insurance fraud absolved him of liability for the charged offense.

A person commits insurance fraud, as relevant here, if he presents a statement as part of, or in support of a claim for payment or other benefit under an insurance policy when he knows that the statement "contains any false, incomplete, or misleading information" material to the claim. § 817.234(1)(a)(1), Fla. Stat.

Nickelson alleges that the State did not show that he intended to commit fraud. But the State's evidence established a timeline showing that Nickelson made a material statement that he knew to be false as part of an insurance claim. Nickelson took the Durango to Pinellas Auto Body Shop on June 14, 2017, for repairs. Eight days later, on June 22, 2017, he called Progressive to take out an insurance policy on the Durango. Four days later, on June 26, 2017, Nickelson called Progressive and spoke with an agent to initiate a claim. During the call, he told the Progressive agent that the damage had happened sometime over the weekend of June 24 to June 25, 2017, which was ten or eleven days after he took the Durango in for service. A few days later,

Nickelson tried to cancel the claim because he "didn't feel right about it." (Doc. 18-1, Ex. 7, p. 217.)

Nickelson asserts that he relied on Brennom's representations that what he did was lawful. But he has not identified any authority holding that any misunderstanding or lack of knowledge about criminal law is a defense to, or a justification or excuse for, committing a crime. Under the circumstances, Nickelson has not shown a reasonable probability that the state appellate court would have found any fundamental error warranting a reversal of Nickelson's conviction. Thus, he has not shown prejudice from appellate counsel's decision not to raise a claim about Cartwright's testimony.

Nickelson has not shown that the state appellate court unreasonably denied his claim of ineffective assistance of appellate counsel. He is not entitled to relief on Ground Three.

**B. Ground Two: Ineffective Assistance of Trial Counsel**

Nickelson argues that trial counsel was ineffective for failing to object to the introduction of hearsay statements made by Shaunna Brennom to Detective Morris. In a recorded interview that was played at trial, Detective Morris asked Nickelson about an alleged conversation between Brennom and Nickelson's girlfriend, Karen:

> MR. MORRIS: Okay. Another thing. I spoke to the girl, Ms. Brennom from the Pinellas County Autobody place, that you took your vehicle to.

> THE DEFENDANT: Yes?
>
> MR. MORRIS: She said that she had a conversation with your girlfriend. . . . Ms. Brennom said that your girlfriend told her that, and you've already admitted that you made a mistake. Your girlfriend told the girl from the body shop that you planned on taking out an insurance policy and filing a claim and uh, the girl at the body shop told your girlfriend that she didn't think that was a good idea. And your girlfriend said, "yeah, I know. I told him but said he was going to do it anyway." Does that conversation sound about right? Do you remember that?
>
> THE DEFENDANT: I've never heard that before.

(Doc. 18-1, Ex. 7, pp. 218-19.)[5]

Nickelson concedes that this claim of ineffective assistance of trial counsel is procedurally defaulted because he did not raise it in state court. But he argues that the cause and prejudice exception, as discussed in *Martinez v. Ryan*, 566 U.S. 1 (2012), excuses the default.

Under *Martinez*, a § 2254 petitioner can show cause for the default of an ineffective assistance of trial counsel claim when "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and the defaulted claim is "substantial" in that it "has some merit." *Id.* at 14, 17. A claim without any merit or that is wholly without factual support is not substantial. *See id.* at 15-16.

[5] Karen did not testify at trial.

A petitioner shows that his defaulted claim is substantial under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.' " *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

Nickelson's defaulted claim of ineffective assistance of trial counsel lacks merit and therefore is not substantial under *Martinez*. Even if counsel had a basis upon which to object to Detective Morris's recorded remarks about Brennom's statements, Nickelson has not shown a reasonable probability of a different outcome at trial had counsel done so. According to Detective Morris, Brennom stated that Nickelson's girlfriend told her that Nickelson had discussed submitting an insurance claim for damage incurred before the policy took effect. But as stated above, the State presented significant evidence that Nickelson knowingly misrepresented the date his vehicle was damaged when he called to file an insurance claim. Nickelson has not shown that trial counsel was ineffective. Therefore, his defaulted claim is not excused under *Martinez* and is barred from federal habeas review.

Within Ground Two, Nickelson also alleges that the State violated *Giglio v. United States*, 405 U.S. 150 (1972), by presenting Brennom's false statements through Detective Morris's recording. Nickelson also alleges that

the State violated his rights under the Sixth Amendment's Confrontation Clause by introducing Karen's hearsay statements through the recording.

Nickelson's *Giglio* and Confrontation Clause claims were not presented to the state courts. Though technically exhausted because state court remedies are no longer available, these claims are defaulted because they were "not presented to the state courts consistent with [the State's] own procedural rules" for raising such claims. *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (internal quotation marks and citations omitted). Nickelson cannot use *Martinez* to excuse the procedural default of these claims because *Martinez* applies only to claims alleging ineffective assistance of trial counsel. *See Davila v. Davis*, 582 U.S. 521, 524-25 (2017). Because Nickelson has not established any other basis to excuse the default, these claims are barred from federal habeas review. Nickelson is not entitled to relief on Ground Three.

**C. Ground Four: Trial Court Error**

Nickelson contends that the state trial court violated his federal due process rights by allowing the State to call two "surprise" witnesses who were previously undisclosed. Respondent contends that Nickelson's claim is procedurally defaulted because he did not raise its federal nature in state court. When Nickelson raised this claim of trial court error on direct appeal, he did not allege a violation of his federal rights. (Doc. 18-1, Ex. 21, pp. 21-25.)

Nor did he cite the United States Constitution or federal case law. (*Id.*) His claim of trial court error relied entirely on State law. (*Id.*)

Nickelson's failure to present a federal due process claim in state court has resulted in the procedural default of the claim in this § 2254 proceeding. *Ramirez*, 596 U.S. at 378. Nickelson does not show that an exception applies to overcome the default. *See id.* at 379. Accordingly, Nickelson's claim is procedurally defaulted. Because he has not shown that an exception applies to excuse the default, Nickelson's claim is barred from federal habeas review. Ground Four does not warrant relief.

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nickelson has not made the requisite showing. Finally, because Nickelson is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Nickelson's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Nickelson and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on August 17, 2026.

Kathryn Kimball Mizelle
United States District Judge